IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBORAH D. KLEIN | : | CIVIL ACTION |
| v. | : | No. 08-3798 |
| DOUGLAS M. WEIDNER, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                              **January 6, 2010**

Klein is the ex-wife and a creditor of Defendant Douglas Weidner (Weidner). Weidner owes Klein $548,797.07 in child and spousal support arrearages, as ordered by the Superior Court of Orange County, California, on June 2, 2008, and entered in the Chester County Court of Common Pleas on August 25, 2008.

On March 17, 2005, Weidner purchased a parcel of real estate, located at 1123 Saint Matthews Road, Chester Springs, Pennsylvania, 19425 (the Property), from his mother, Cross-Plaintiff Jean Weidner, for $225,000. On January 17, 2006, Weidner transferred the Property to himself and his wife, Kathleen Weidner (Kathleen), as tenants by the entirety. On March 31, 2006, the Property was appraised at approximately $750,000. Klein claims Weidner's transfer of the Property violated the Pennsylvania Uniform Fraudulent Transfer Act, 12 Pa. C.S. § 5101 *et seq.* (PUFTA), and argues there is no disputed issue of material fact and she is therefore entitled to summary judgment on her claim.

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Ricci v. DeStefano*, 120 S. Ct. 2658, 2677 (2009) (citation and internal quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.*

PUFTA creates several categories of fraudulent transfer. First, a debtor's transfer is fraudulent, regardless of whether the creditor's claim arose before or after the transfer, if the debtor transferred "with actual intent to hinder, delay or defraud any creditor of the debtor." 12 Pa. C.S. § 5104(a)(1). Second, a debtor's transfer is also fraudulent as to present and future creditors if the debtor made the transfer:

> without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> (i) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> (ii) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

§ 5104(a)(2). Third, a debtor's transfer is fraudulent as to present creditors only "if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer . . . ." § 5105. Weidner's transfer of the Property satisfies all three of the fraudulent transfers described by PUFTA.

Weidner's transfer of the Property was made with "with actual intent to hinder, delay or

2

defraud" Klein. § 5104(1). PUFTA sets forth eleven factors the Court may consider when determining whether a transfer was made with fraudulent intent, and Weidner's transfer of the Property satisfies many of the factors. First, the transfer was "to an insider." § 5104(b)(1); *see In re DelCorso*, 382 B.R. 240, 259 (Bankr. E.D. Pa. 2007) (concluding transfer of property from debtor to debtor and debtor's husband, as tenants by the entirety, was a transfer to an "insider" within the meaning of PUFTA). Second, Weidner "retained possession or control of the property transferred after the transfer" because Weidner still resides at and operates his business from the Property. § 5104(b)(2). Third, "before the transfer was made . . . , the debtor had been sued or threatened with suit." § 5104(b)(4). Weidner and Klein were involved in litigation regarding his support payments prior to the transfer. Fourth, Weidner "removed" assets in the sense that, by transferring the Property to himself and his wife as tenants by the entirety, he removed the Property from the reach of all of his creditors, including Klein. § 5104(b)(7); *see Popky v. United States*, 326 F. Supp. 2d 594, 598 (E.D. Pa. 2004) ("[U]nder Pennsylvania law, a creditor against one spouse only cannot attach a lien to property held by both spouses in a tenancy by the entireties . . . .") (citation omitted).

A fifth factor this Court considers when determining whether there was an actual fraudulent transfer is whether the value of the consideration received by Weidner was "reasonably equivalent to the value of the asset transferred." § 5104(b)(8). The deed which recorded the Property's transfer states Kathleen paid $1.00 to Weidner for her interest in the Property. An appraisal completed shortly after the transfer assessed the Property's value at $750,000. Even if the $225,000 mortgage encumbrance is deducted from the Property's value, one dollar is not reasonably equivalent consideration. Defendants argue Kathleen's payments to contractors for renovations on the Property, totaling over $300,000, constitute reasonably equivalent value for her interest in the Property, or,

alternatively, her promise to Weidner to make such payments constitutes reasonably equivalent value. Defendants' arguments are unavailing. As an initial matter, Kathleen's payments for renovations began approximately ten months after the Property's transfer and thus could not constitute reasonably equivalent value at the time of transfer. More importantly, under PUFTA, "reasonably equivalent value" is measured from Klein's perspective, not the Weidners'. *See In re Erie Marine Enters., Inc.*, 213 B.R. 799, 803 (Bankr. W.D. Pa. 1997) ("The existence of a fair exchange must be determined from the perspective of creditors rather than from the vantage point of the debtor."); *In re Walter*, 261 B.R. 139, 143 (Bankr. W.D. Pa. 2001) ("[N]ot just any consideration given necessarily constitutes value in every instance. Consideration having no utility from the viewpoint of a creditor does not constitute value for purposes of § 5103(a) and, hence, for purposes of §§ 5104(a)(2) and 5105."). Kathleen's payments to contractors and/or promise to pay for renovations did not replace the depletion of Weidner's assets caused by the Property transfer. Without replacing the lost value, Klein, as creditor, is harmed by the transfer. Therefore, Kathleen's payments and/or promise to pay do not constitute "reasonably equivalent value" for PUFTA purposes.

The sixth factor which shows actual intent to defraud is a transfer while the debtor "was insolvent or [the debtor] became insolvent shortly after the transfer was made." § 5104(b)(9). PUFTA defines a debtor as insolvent when "the sum of the debtor's debts is greater than all of the debtor's assets." § 5102(a). At deposition, Weidner testified, in January 2006, in addition to the Property transfer, he also transferred his ownership interest in Defendant DMW Marine, LLC to himself and his wife, as tenants by the entirety. He further testified he held no assets in only his name after those two transfers. At this time, Weidner owed Klein thousands of dollars in support

4

arrearages, such that his debt exceeded his assets and he was therefore insolvent or became insolvent shortly after transferring the Property.

In addition, Weidner's words and conduct demonstrate his intent to prevent Klein from collecting her debt from him. In a November 2001 e-mail to Klein, Weidner stated he would "never ever give her a red cent again" and Klein would "never ever see a penny from [him] again." Pl.'s Mot. for Summ. J., Ex. E. Similarly, in February 2005, Weidner's attorney wrote Klein's counsel, stating "I have been informed by Mr. Weidner that his assets that do exist have been protected in such a way that while the children will be provided for, it will be impossible for [Klein] to recover any of the court ordered arrearages." Pl.'s Mot. for Summ. J., Ex. F. Various other exhibits attached to Klein's motion document Weidner's attempts to disrupt and frustrate the instant litigation. Because the circumstances surrounding the Property's transfer satisfy six of the eleven factors set forth by PUFTA, and Weidner has demonstrated his intent to avoid paying his debt to Klein, the Court concludes Weidner's transfer of the Property was made with actual fraudulent intent, under § 5104(a)(1).

Weidner's transfer of the Property also satisfies the constructive transfer provisions of PUFTA. Klein has shown Weidner transferred the Property "without receiving a reasonably equivalent value in exchange." § 5104(a)(2). Also, Weidner's transfer of the Property and contemporaneous transfer of other assets rendered him insolvent, and thus Weidner "believed or reasonably should have believed that [he] would incur, debts beyond [his] ability to pay as they became due" when he transferred the Property. *Id.*

Finally, Weidner's transfer of the Property also satisfies § 5105 of the PUFTA, which applies

only to present creditors. Klein was a present creditor of Weidner's at the time of the transfer because her "claim arose before the transfer was made." § 5105. PUFTA defines claim as "[a] right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured." § 5101. Klein was thus a present creditor under PUFTA because she had a claim against Weidner for unpaid support when the Property was transferred. Under § 5105, a transfer is fraudulent "if the debtor made the transfer . . . without receiving a reasonably equivalent value in exchange for the transfer . . . and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer . . . ." *Id.* As discussed earlier, Klein has established Weidner did not receive reasonably equivalent value in exchange for the Property and he became insolvent as a result of the transfer.

Accordingly, Klein's motion for summary judgment is granted as to Count I of her Amended Complaint, and her motion is denied as to the remaining counts. An appropriate order follows.