IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBORAH D. KLEIN | : | CIVIL ACTION |
| | : | |
| v. | : | No. 08-3798 |
| | : | |
| DOUGLAS M. WEIDNER, et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**　　　　　　　　　　　　　　　　　　　　　　　　　**June 30, 2017**

　　　　Movant Michael J. Antonoplos, the court-appointed receiver for DMW Marine, LLC, a Defendant in the above-referenced action, seeks an award of sanctions pursuant to 28 U.S.C. § 1927 and the Court's inherent authority against the law firm Maschmeyer Karalis P.C. and two Maschmeyer attorneys (collectively, Respondents) for their filing and pursuit of what the Receiver contends was a meritless adversary action against him in the U.S. Bankruptcy Court for the Eastern District of Pennsylvania. Respondents filed the adversary action as part of DMW's bankruptcy proceedings in which they served as counsel to the Trustee. Because this Court lacks authority to impose sanctions under § 1927 for litigation conduct before the Bankruptcy Court, and because the sanctions motion is untimely in any event, the sanctions motion will be dismissed.

**BACKGROUND**

　　　　In August 2008, Plaintiff Deborah D. Klein filed this action against her ex-husband, Douglas M. Weidner, and DMW, which Weidner then controlled, among other Defendants. The lawsuit arose out of a $548,797.07 judgment Klein had obtained against Weidner in California for spousal and child support arrearages. To collect the judgment, Klein sought to set aside under the Pennsylvania Uniform Fraudulent Transfer Act certain transfers by Weidner of real

property and other assets. She also sought to reverse-pierce DMW's corporate veil, enabling her to treat DMW's assets as Weidner's personal assets for purposes of satisfying his debt to her.

In January 2010, the month before trial, Klein filed an emergency motion for appointment of a receiver for DMW so as to prevent Weidner from concealing the company's assets.[1] This Court granted the motion and appointed Antonoplos as Receiver "to manage, operate and preserve all of the property, real, personal and mixed, belonging to DMW Marine, LLC . . . together with all the rents, income and profits from the company." Order ¶ 1, Jan. 19, 2010, ECF No. 137. The following month, after a bench trial, this Court entered judgment in favor of Klein on her remaining claims, including her claim to reverse-pierce DMW's corporate veil. The Court also issued an order extending and modifying Antonoplos's receivership of DMW. *See* Order, Feb. 16, 2010, ECF No. 147.

Fifteen months later, in May 2011, DMW filed a bankruptcy petition in the U.S. Bankruptcy Court for the Eastern District of Pennsylvania.[2] Michael H. Kaliner was appointed as Trustee in the bankruptcy case in June 2011, and the Bankruptcy Court thereafter approved the Trustee's application to employ the Maschmeyer firm as counsel.

In May 2013, the Trustee, represented by Maschmeyer attorneys Paul Maschmeyer and Linda Alle-Murphy, filed an adversary action against the Receiver, alleging the Receiver had dissipated DMW's assets by paying Klein out of customer deposits and cash on hand that should have been used for operating expenses, rather than out of the company's profits, allegedly in violation of this Court's receivership orders, and by taking excessive compensation for

---

[1] Klein filed the emergency motion after this Court granted summary judgment in her favor on one of her fraudulent transfer claims.

[2] Although the bankruptcy case was originally filed as a Chapter 11 case, it was quickly converted to a Chapter 7 case.

essentially no work. *See generally* Compl., *Kaliner v. Antonoplos (In re DMW Marine, LLC)*, No. 13-290 (Bankr. E.D. Pa. May 16, 2013). The Trustee asserted claims against the Receiver for negligence and breach of fiduciary duty, and sought to avoid certain transfers of funds as preferential transfers or fraudulent conveyances under the Bankruptcy Code.[3] The filing and pursuit of this adversary action against the Receiver are the basis for the instant sanctions motion.

In February 2014, nine months after the adversary action was filed, the Receiver moved to dismiss the action for lack of subject matter jurisdiction based on the *Barton* doctrine, which, subject to certain exceptions, "requires a party seeking to sue a court-appointed receiver, to first obtain leave of the appointing court." *In re VistaCare Grp., LLC*, 678 F.3d 218, 222 (3d Cir. 2012); *see also Barton v. Barbour*, 104 U.S. 126, 128 (1881) (stating the "general rule that before suit is brought against a receiver leave of the court by which he was appointed must be obtained"). The Trustee opposed the motion, arguing the *Barton* doctrine was inapplicable and, alternatively, the Receiver had waived the right to raise the doctrine.

In April 2014, the Bankruptcy Court issued an opinion which thoroughly analyzed the jurisdictional issue and concluded (1) the *Barton* doctrine applied; (2) neither of the two

---

[3] The same day he filed the adversary action against the Receiver, the Trustee, represented by Respondents, filed a separate adversary action against Klein, her counsel, and the Receiver's counsel, seeking to avoid certain payments made to these individuals as preferential transfers or fraudulent conveyances under the Bankruptcy Code. *See generally* Compl., *Kaliner v. Klein (In re DMW Marine, LLC)*, No. 13-291 (Bankr. E.D. Pa. May 16, 2013). This adversary action was ultimately dismissed pursuant to stipulations of the parties in July 2014 and September 2014. The Trustee also filed in this Court a motion for disgorgement of legal fees paid to the Receiver's counsel based on the Receiver's failure to obtain the Court's approval before making the challenged payments, as required by the February 16, 2010, receivership order. The motion alternatively sought to require the Receiver's counsel to apply to the Court for approval of the fees. In November 2013, after reviewing the challenged legal bills, and without objection from the Trustee, this Court approved the payments nunc pro tunc and dismissed the motion to disgorge as moot.

recognized exceptions to the doctrine—the statutory exception or the "ultra vires" exception[4]—applied; and (3) assuming application of the doctrine was waivable, no waiver had occurred. Although recognizing that, in ordinary circumstances, the appropriate remedy would be to dismiss the adversary action for lack of subject matter jurisdiction, the Bankruptcy Court also noted that if the case were dismissed, the Trustee would likely be unable to cure the jurisdictional defect by seeking this Court's leave to pursue the action because the claims would be time-barred. Given the likelihood that dismissal based on the *Barton* doctrine would preclude the Trustee from pursuing his claims against the Receiver—and in light of the unique relationship between bankruptcy courts and the district courts of which they are a part, which, in the Bankruptcy Court's view, muted the concerns animating the *Barton* doctrine—the Bankruptcy Court did not dismiss the adversary action. Instead, the court issued its opinion as a Report and Recommendation asking this Court to determine whether:

(1) the reference of this adversary proceeding should be withdrawn;

(2) the Trustee should be granted authorization to proceed before the bankruptcy court in this adversary proceeding;

(3) it should decline either to withdraw the reference or authorize the Trustee to proceed before the bankruptcy court and instead, should instruct the bankruptcy [court] to enter an order granting the Defendant's Motion and dismissing this adversary proceeding for lack of jurisdiction; or

(4) it should enter any other appropriate order.

---

[4] The statutory exception, codified at 28 U.S.C. § 959(a), permits a receiver to be sued without leave of the appointing court "with respect to any of [the receiver's] acts or transactions in carrying on business connected with [receivership property]." Under the "ultra vires" exception, it is unnecessary to seek the appointing court's permission to sue a receiver when the receiver "act[s] outside the scope of his authority." *Grant, Konvalinka & Harrison, PC v. Banks (In re McKenzie)*, 716 F.3d 404, 422 (6th Cir. 2013); *see also Teton Millwork Sales v. Schlossberg*, 311 F. App'x 145, 148 (10th Cir. 2009) (holding the "ultra vires" exception exempts "claims against the receiver for 'tak[ing] possession of property belonging to another'" (quoting *Barton*, 104 U.S. at 134 (alteration in original))).

*Kaliner v. Antonoplos (In re DMW Marine, LLC)*, Misc. No. 14-105, R. & R. (E.D. Pa. May 24, 2014), ECF No. 1.[5]

Upon review of the Report and Recommendation, this Court issued an order in August 2014 declining to either withdraw the reference of the adversary action or authorize the Trustee to proceed with the action, and directing the Bankruptcy Court to take whatever action it deemed appropriate with respect to the Receiver's motion to dismiss. In the order, the Court noted that since the filing of the Report and Recommendation, the Trustee had neither requested leave to pursue the adversary action against the Receiver, nor presented any argument why the Court should withdraw the reference. *See Kaliner v. Antonoplos (In re DMW Marine, LLC)*, Misc. No. 14-105, Order 2 (E.D. Pa. Aug. 26, 2014) (citing *VistaCare* for the proposition that "[a] party seeking leave of court to sue a [receiver] [under the *Barton* doctrine] must make a prima facie case against the [receiver], showing that its claim is not without foundation" (citation and internal quotation marks omitted)). The Court did not independently review the record in the adversary action, however, and thus expressed no opinion as to the merits of either the Trustee's claims in that action or the Receiver's motion to dismiss.

---

[5] The Bankruptcy Court acknowledged that the first two options, both of which would allow this Court to cure the error in the Trustee's original filing, were at least arguably inconsistent with other bankruptcy court authority. *See* R. & R. 23-24 n.28 (citing *Richardson v. Monaco (In re Summit Metals, Inc.)*, 477 B.R. 484, 497 (Bankr. D. Del. 2012), in which the court held a violation of the *Barton* doctrine cannot be remedied retroactively by obtaining the appropriate court's permission to sue). While the Bankruptcy Court agreed "there should be a presumption that a violation of the *Barton* doctrine should result in dismissal rather than retention of jurisdiction pending a determination whether the receivership court will authorize the filing in the non-receivership forum," the court opined that this presumption should not be "an inflexible rule." *Id.*

The following month, in September 2014, the Bankruptcy Court issued an order dismissing the adversary action for lack of subject matter jurisdiction pursuant to the *Barton* doctrine. The Trustee did not file an appeal.

Two years later, in September 2016, the Receiver filed the instant motion for sanctions pursuant to 28 U.S.C. § 1927 and the Court's inherent authority, seeking to recover from the Trustee's counsel—Maschmeyer, Alle-Murphy and the Maschmeyer firm—the attorney's fees he incurred in "investigating, researching and fighting" the adversary action and in "research[ing], prepar[ing] and prosecut[ing]" his sanctions motion.[6] Sanctions Mot. 1. Respondents oppose the sanctions motion.

**DISCUSSION**

Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

The sanctions authorized by § 1927 "are intended to deter an attorney from intentionally and unnecessarily delaying judicial proceedings, and they are limited to the costs that result from such delay." *Prosser v. Gerber (In re Prosser)*, 777 F.3d 154, 161 (3d Cir. 2015) (citation omitted). To impose sanctions on an attorney pursuant to § 1927, a court must find the attorney "(1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) d[id] so in bad faith or by intentional misconduct." *Id.* at 162 (citation omitted).

---

[6] The Receiver filed an initial motion for sanctions in August 2016, but because the motion and its accompanying memorandum of law exceeded this Court's page limits by 68 pages, the Court directed the Receiver to re-file an abbreviated version of the motion.

In addition to the sanctioning authority expressly conferred by statutes and court rules, the federal courts "possess certain 'inherent powers . . . to manage their own affairs so as to achieve the orderly and expeditious disposition of cases,'" *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)), including "the ability to fashion an appropriate sanction for conduct which abuses the judicial process," *id.* (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)); *see also Chambers*, 501 U.S. at 45-46 (holding a federal court has inherent power to assess attorney's fees when a party "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons" or "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order" (internal quotation marks and citations omitted)). The sanctions available to a court in the exercise of its inherent authority include requiring "a party that has acted in bad faith to reimburse legal fees and costs incurred by the other side" because of the misconduct at issue. *Goodyear*, 137 S. Ct. at 1186.

The Receiver argues sanctions are warranted because the filing and continuation of the adversary action against the Receiver in the Bankruptcy Court "was in bad faith, lacking of any factual basis, and necessarily presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation, because there was never any factual or legal basis to support the allegations made by Respondents."[7] Sanctions Mot. ¶ 42. In

---

[7] More particularly, the Receiver argues Respondents' position that Klein was to be paid only from DMW's profits was not supported by this Court's receivership orders, which do not use the word "profits," and was inconsistent with the reverse-piercing remedy the Court ordered, which the Receiver contends made all of DMW's assets immediately available to pay Klein's judgment without regard to existing creditors. The Receiver also maintains Respondents' allegations regarding his receipt of excess compensation were unfounded, noting he was paid in accordance with an agreement negotiated with Klein, as contemplated by the January 19, 2010, receivership order. Respondents dispute the Receiver's interpretation of the receivership orders, which they

7

addition to arguing the claims asserted in the adversary action were substantively meritless, the Receiver also cites Respondents' violation of the *Barton* doctrine, asserting Respondents failed to seek this Court's leave to file the adversary action "because they could never have made any showing of a prima facie case against [the] Receiver." *Id.* ¶ 25.

Respondents urge this Court to dismiss the sanctions motion for lack of subject matter jurisdiction, arguing that because all of the allegedly sanctionable conduct occurred in the adversary action before the Bankruptcy Court, the motion must be adjudicated by that court in the first instance. The Court agrees the Bankruptcy Court is the proper forum for the Receiver's request for sanctions pursuant to § 1927.[8]

Section 1927 "limits the court's sanction power to attorney's actions which multiply the proceedings in the case before the court" from which sanctions are sought. *Citizens Bank & Tr. Co. v. Case (In re Case)*, 937 F.2d 1014, 1023 (5th Cir. 1991); *see GRiD Sys. Corp. v. John Fluke Mfg. Co.*, 41 F.3d 1318, 1319 (9th Cir. 1994) (agreeing that "§ 1927 limits a federal court's ability to sanction an attorney for conduct before another court"); *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 69 (2d Cir. 1990) (holding a request for an award of attorney's fees under § 1927 must be "made in the case in which the attorney's unreasonable conduct is alleged

---

understood to contemplate that Klein would be treated as a creditor of DMW and "was only to be paid from a solvent company with all of its debts current." Resp'ts' Mem. 4-5.

[8] Respondents also argue the sanctions motion must be adjudicated in the Bankruptcy Court because "a request for § 1927 sanctions arising out of an attorney's conduct in a core proceeding is itself a core proceeding." Resp'ts' Mem. 7 (citing *Kramer v. Mahia (In re Khan)*, 488 B.R. 515, 526 (Bankr. E.D.N.Y. 2013)). The Receiver disputes that the adversary action was a core proceeding. Because the Court finds it lacks authority to impose § 1927 sanctions for other reasons, the Court need not resolve this dispute. It appears, however, that the adversary action involved both core and non-core claims. *See* Trustee's Statement Complying with Court Order of June 17, 2013 in *Kaliner v. Antonoplos (In re DMW Marine, LLC)*, No. 13-290 (Bankr. E.D. Pa. June 20, 2013), ECF No. 10 (taking the position that the negligence and breach of fiduciary counts of the adversary complaint were non-core).

8

to have occurred"); *Raymark Indus., Inc. v. Baron*, No. 96-7625, 1997 WL 359333, at *7-8 (E.D. Pa. June 23, 1997) (same); *In re Schaefer Salt Recovery, Inc.*, 444 B.R. 286, 299-300 (Bankr. D.N.J. 2011) (holding § 1927 is directed to "conduct that occurs before the court considering the sanction—not conduct in some other court"). Although there is some disagreement among the federal courts as to whether a court's sanctioning authority under § 1927 is limited solely to misconduct occurring before the sanctioning court,[9] the statute has been construed to reach only conduct that in some way "delay[s] or interfere[s] with the proceedings in [the sanctioning court]." *Raymark Indus.*, 1997 WL 359333, at *8.

As Respondents note, all of the alleged misconduct underlying the Receiver's sanctions request occurred in the Bankruptcy Court, where Respondents filed the allegedly baseless adversary action without first seeking this Court's authorization. Moreover, to the extent that Respondents' filing and pursuit of the adversary action "multiplie[d] the proceedings in any case unreasonably and vexatiously," 28 U.S.C. § 1927, they did so in the Bankruptcy Court, where the adversary action was litigated, *see Prosser*, 777 F.3d at 162 (holding the filing of a meritless adversary complaint may be sanctionable by the bankruptcy court under § 1927 because it may multiply the proceedings in the bankruptcy case of which the adversary proceeding is a part).

The Receiver advances a number of arguments as to why the sanctions motion is properly before this Court, asserting that because the *Barton* doctrine required Respondents to seek this Court's authorization before filing the adversary action, only this Court can sanction

---

[9] *Compare, e.g.*, *Case*, 937 F.2d at 1023 ("Section 1927 does not reach conduct that cannot be construed as part of the proceedings before the court issuing § 1927 sanctions."), *with Robertson v. Cartinhour*, 883 F. Supp. 2d 121, 129-30 (D.D.C. 2012) (imposing § 1927 sanctions for conduct before another district court in a case that was ultimately transferred to the sanctioning court), *aff'd*, 554 F. App'x 3 (D.C. Cir. 2014); *see also Boyer v. BNSF Ry. Co.*, 832 F.3d 699, 701 (7th Cir. 2016) (recognizing a split in authority as to whether § 1927 authorizes sanctions for filing an action in state court which was subsequently removed to federal court and dismissed).

Respondents for their *Barton* violation, and positing that had Respondents complied with *Barton*, the adversary action would have been avoided altogether, as this Court would not have permitted the suit. These arguments miss the mark. Regardless of whether the adversary action could have been avoided had Respondents sought leave to file it, the failure to seek such leave did not have the effect of multiplying the proceedings in this Court, but instead impacted the proceedings in the Bankruptcy Court, where the adversary action was filed and the motion to dismiss was litigated. Indeed, the only "proceeding" in this Court traceable to Respondents' failure to seek leave before filing the adversary action was the Bankruptcy Court's filing of its Report and Recommendation.[10] That filing, however, did not generate any of the attorney's fees for which the Receiver now seeks reimbursement, as neither party responded to the Report and Recommendation.[11] The Receiver further argues this Court should adjudicate the sanctions motion because the merits of the adversary action turn on the proper interpretation of this Court's receivership orders, and the undersigned is "the only person who can determine what *he* 'envisioned' and what *he* intended by *his* Orders." Receiver's Sur-Reply 7. This consideration is also beside the point, as this Court's familiarity with the receivership orders does not change the fact that the filing of the adversary action did not multiply the proceedings in this Court.

---

[10] Notably, the Report and Recommendation was not filed in this case, but was docketed as a separate miscellaneous action. *See Kaliner v. Antonoplos (In re DMW Marine, LLC)*, Misc. No. 14-105 (E.D. Pa. filed Aug. 26, 2014).

[11] Insofar as the Receiver suggests that under the *Barton* doctrine, only this Court has jurisdiction to consider his sanctions request, that argument is incorrect. *See Tellado v. IndyMac Mortg. Servs.*, 707 F.3d 275, 281 (3d Cir. 2013) (recognizing that sanctions may be "upheld in the absence of subject matter jurisdiction when the sanctions order is collateral to the merits"); *Mirch v. Frank*, 266 F. App'x 586, 588 n.2 (9th Cir. 2008) (holding a district court retained jurisdiction to sanction a defendant under § 1927 for filing a third-party complaint that multiplied the proceedings, even though the court lacked jurisdiction over the third-party complaint).

Because all of the allegedly sanctionable conduct and any alleged multiplication of the proceedings occurred in the Bankruptcy Court, the Receiver's sanctions motion is outside the scope of this Court's sanctioning authority under § 1927.[12] The Receiver's request for sanctions pursuant to § 1927 will therefore be dismissed.

As to the Receiver's request for inherent authority sanctions, a court's inherent power to sanction bad-faith conduct is not limited to "conduct occurring in its presence." *Chambers*, 501 U.S. at 57. Rather, as the Supreme Court has recognized, "[a]s long as a party receives an appropriate hearing, . . . the party may be sanctioned for abuses of process occurring beyond the courtroom, such as disobeying the court's orders." *Id.* It is not clear how far this inherent authority to sanction a party for conduct occurring "beyond the courtroom" extends. In *Chambers*, the Supreme Court upheld a district court's imposition of inherent authority sanctions on a litigant for a wide range of litigation misconduct, including misconduct before the Federal Communications Commission. But in holding this misconduct was within the scope of the district court's inherent sanctioning power, the Court stressed that the litigant's actions were "in direct contravention of the District Court's orders to maintain the status quo pending the outcome of the litigation." *Id.* Following *Chambers*, courts have held inherent authority sanctions may be

---

[12] *Eisenman v. Peoro (In re Peoro)*, 793 F.2d 1048 (9th Cir. 1986), does not hold to the contrary. In *Peoro*, the Ninth Circuit Court of Appeals affirmed a district court's imposition of sanctions on a litigant under § 1927 for employing "harassing litigation tactics" before a bankruptcy court. Unlike this case, *Peoro* involved a situation in which the district court had withdrawn the reference of the matter in question to the bankruptcy court and then referred the matter back to the bankruptcy court "to take evidence and recommend findings of fact, conclusions of law, and orders." *Id.* at 1050. Further, the district court imposed the sanctions on the recommendation of the bankruptcy court. *Id.* Here, in contrast, this Court expressly declined to withdraw the reference of the adversary action to the Bankruptcy Court. *See Raymark Indus.*, 1997 WL 359333, at *7 n.10 (declining to interpret *Peoro* as holding district courts are generally authorized to impose § 1927 sanctions for conduct occurring in the bankruptcy courts and rejecting the argument that district courts and bankruptcy courts are not separate courts for purposes of the imposition of sanctions).

11

imposed for misconduct in another court where the misconduct is part of the same case in which sanctions are imposed, *see Boyer*, 832 F.3d at 700-02 (holding a federal court has inherent authority to sanction a litigant for filing an action in state court where the state forum selected was "patently inappropriate," necessitating a removal to federal court and a transfer to another district), or is "in some way related to the case before the [sanctioning] court," *Raymark Indus.*, 1997 WL 359333, at *7, but not when the proceeding in which the misconduct occurs is "completely collateral" to the proceeding in which sanctions are sought, *Case*, 937 F.2d at 1023.[13] *But see Schaefer Salt*, 444 B.R. at 299-300 (holding a court's inherent power to sanction is directed to "conduct that occurs before the court considering the sanction—not conduct in some other court"); *In re Galgano*, 358 B.R. 90, 104 (Bankr. S.D.N.Y. 2007) (holding a court "has no authority to exercise . . . its inherent power . . . to sanction a party for conduct that occurred before another court").

Respondents do not address whether the sanctions requested by the Receiver are within the scope of this Court's inherent authority. Indeed, they do not address the Receiver's request

---

[13] In *Case*, the Fifth Circuit held a bankruptcy court exceeded its inherent authority by imposing sanctions on a debtor's attorney for his client's pursuit of baseless counterclaims in a state court action. *See* 937 F.2d at 1023-24. The state court action was filed by a bank to which the debtor had executed a $75,000 promissory note in settlement of a claim as part of his bankruptcy proceedings. After the bankruptcy proceedings concluded, the bank sued the debtor in state court for defaulting on the note, and the debtor (who was also himself a lawyer) alleged the bank had fraudulently induced him to sign the note by orally promising that he could satisfy the note by providing legal services to the bank. The bank also successfully petitioned the bankruptcy court to reopen the estate and obtained a judgment for the outstanding balance of the note, plus an award of sanctions against both the debtor and his attorney in the amount of the bank's attorney's fees in the bankruptcy proceeding as well as the collateral state action. Although the Fifth Circuit upheld the sanctions award against the debtor's attorney for the fees the bank incurred in the bankruptcy proceeding, it held the bankruptcy court's "inherent power to punish bad-faith conduct d[id] not extend to actions in a separate state court proceeding," as the parties' conduct in the state court action could not "be said to affect the exercise of the judicial authority of the bankruptcy court or limit the bankruptcy court's power to control the behavior of parties and attorneys in the litigation before it." *Id.*

for inherent authority sanctions at all in their opposition. The Court need not resolve this issue. For even assuming this Court has inherent authority to sanction Respondents for litigation conduct in the Bankruptcy Court,[14] the Court nevertheless finds sanctions are not warranted here because the Receiver delayed unreasonably in filing the instant sanctions motion.

In the Third Circuit, a request for inherent authority sanctions for misconduct occurring before final judgment must typically be made before entry of final judgment. *See Prosser v. Prosser*, 186 F.3d 403, 406 (3d Cir. 1999). Although a court "retains its power to sanction under its inherent power for abuses which occur or are discovered after the entry of the final order," *id.* at 406 n.3, courts have also recognized that "unreasonable delay in filing a motion for sanctions under the court's inherent powers may render the request untimely," *MGA Entm't, Inc. v. Nat'l Prods. Ltd.*, No. 10-7083, 2012 WL 4052023, at *4 (C.D. Cal. Sept. 14, 2012); *see Clark v. United States*, No. 06-544, 2011 WL 66181, at *4 (D. Haw. Jan. 7, 2011) (same); *see also Home*

---

[14] Notably, there is some case law support for the proposition that inherent authority sanctions for filing an action in violation of the *Barton* doctrine may be imposed by the appointing court— i.e., the court from which leave to file should have been, but was not, sought. *See Steffen v. Berman (In re Steffen)*, 406 B.R. 148, 152-53 (Bankr. M.D. Fla. May 21, 2009) (imposing inherent authority sanctions on a debtor's counsel for filing lawsuits in state court against the bankruptcy trustee without first seeking leave from the bankruptcy court); *see also ACE Ins. Co. v. Smith (In re BCE West, L.P.)*, No. 06-325, 2006 WL 8422206, at *8-10 (D. Ariz. Sept. 20, 2006) (holding "[s]anctions are an appropriate remedy for a violation of the *Barton* doctrine" and affirming a bankruptcy court's imposition of sanctions against a party for filing suit against a bankruptcy trustee in a Bermuda court without first seeking the bankruptcy court's leave); *Whitaker v. Annamalai (In re Hindu Temple & Cmty. Ctr. of Ga., Inc.*, No. 09-82915, 2012 WL 10739280, at *3 (Bankr. N.D. Ga. Sept. 12, 2012) (recognizing a bankruptcy court has "inherent power to impose sanctions for bad-faith conduct," including the filing of actions in other courts in violation of the *Barton* doctrine). It is not clear to this Court, however, that Respondents' failure to seek leave to file the adversary action rises to the level of sanctionable misconduct given the unusual procedural posture of this case. Nothing in the Bankruptcy Court's opinion suggests the Bankruptcy Court perceived Respondents' filing as frivolous. Indeed, the Bankruptcy Court ultimately concluded Respondents' violation of the *Barton* doctrine was curable. That the Receiver himself did not seek dismissal of the adversary action on *Barton* grounds until nine months after the action was filed weighs against a finding that Respondents' initial failure to seek leave to file is necessarily sanctionable.

13

*Gambling Network, Inc. v. Piche*, No. 05-610, 2015 WL 1734928, at *19 (D. Nev. Apr. 16, 2015) (noting "it is widely agreed in the Ninth Circuit that 'a motion for sanctions, regardless of the source of authority for the imposition of sanctions, must be timely filed'" (quoting *MGA Entm't*, 2012 WL 4052023, at *4)).[15] A motion for sanctions under § 1927 need not be filed prior to the entry of final judgment, as § 1927 "explicitly covers only the multiplication of proceedings that prolong the litigation of a case" and the basis for such sanctions may therefore "become apparent only at or after the litigation's end." *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 101-02 (3d Cir. 2008) (citation omitted). Nevertheless, a motion for § 1927 sanctions "should be filed within a reasonable time." *Id.* at 102.

While the Third Circuit has not had occasion to "define . . . the outer limits of 'reasonable,'" *id.*, this Court has no difficulty concluding the Receiver's delay in filing the instant sanctions motion was not reasonable. Respondents filed the adversary action on which the sanctions motion is based on May 16, 2013, and the Bankruptcy Court entered an order dismissing the case for lack of subject matter jurisdiction on September 29, 2014. Because Respondents did not appeal, the dismissal became final on October 13, 2014, when the 14-day appeal period expired. *See* Fed. R. Bankr. P. 8002(a)(1). Yet, inexplicably, the Receiver did not file the initial oversize version of the instant sanctions motion until August 19, 2016, nearly two years later.[16] This unexplained 22-month delay is greater than delays that have been held

---

[15] Although the Third Circuit does not appear to have addressed the issue of timeliness with respect to a post-judgment motion for inherent authority sanctions, the Court of Appeals has held that motions for sanctions under § 1927, which may be filed after entry of final judgment, "should be filed within a reasonable time." *In re Schaefer Salt Recovery, Inc.*, 542 F.3d 90, 102 (3d Cir. 2008). This Court sees no reason why the same rule should not apply to a post-judgment motion for inherent authority sanctions.

[16] In his sur-reply brief, the Receiver offers no explanation for his delay in seeking sanctions, but instead asserts the motion is timely because it was filed within the two-year statute of limitations

unreasonable in other cases. *See Overnite Transp. Co. v. Chicago Indus. Tire Co.*, 697 F.2d 789, 793-94 (7th Cir. 1983) (holding a motion for § 1927 sanctions filed eight months after the plaintiff's complaint was dismissed for lack of subject matter jurisdiction and two months after the dismissal was affirmed on appeal was not filed within a reasonable time); *Home Gambling Network*, 2015 WL 1734928, at *19 (holding a motion for sanctions pursuant to § 1927 and the court's inherent authority filed 15 months after summary judgment was entered in the movant's favor and seven months after the judgment was affirmed on appeal was not filed within a reasonable time and was therefore untimely). Because the Receiver did not file the sanctions motion within a reasonable time after the conduct for which sanctions are sought occurred, the motion will be dismissed as untimely.

For the reasons set forth above, the Receiver's motion for sanctions is dismissed. An appropriate order follows.

---

that would have applied had he filed a separate lawsuit and, in any event, the request for inherent authority sanctions is timely because it concerns a collateral matter that the Court may consider even after the underlying action is no longer pending. This Court disagrees. As to the statute of limitations argument, the Receiver did not, in fact, file a separate civil action and cites no authority for the proposition that the sanctions motion could have been filed as such an action. *Cf. Cresswell*, 922 F.2d at 69-70 (finding "no basis for concluding that § 1927 was intended to permit a litigant to institute a new lawsuit to collect excess costs and fees incurred in a prior litigation"); *Raymark Indus.*, 1997 WL 359333, at *7 (same). And the fact that a court may have the power to impose sanctions pursuant to its inherent authority after entry of final judgment does not mean a court is required to exercise this power when a litigant has delayed unreasonably in seeking sanctions.